**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF IDAHO**

| | |
|---|---|
| IN RE:<br><br>**MURIE GRAPHIC DESIGN INC.,**<br><br>Debtor. | **Case No. 24-00419-NGH**<br><br>**Chapter 7** |

**MEMORANDUM OF DECISION**

On October 1, 2024, Christi Murie filed a motion to dismiss this chapter 7 case. Doc. No. 14. Murie seeks dismissal under § 707(a)[1] on the grounds that the case was filed without the requisite corporate authority. Murie Graphic Design Inc. ("Debtor") objected to the motion. Doc. No. 17. The parties filed a statement of undisputed facts. Doc. No. 20. The Court heard oral arguments on December 9, 2024, and took the matter under advisement. The following decision resolves the matter.

**BACKGROUND**

Debtor, through its president and director, James Albert, filed a petition for relief under chapter 7 of the Bankruptcy Code in July 2024. Doc. No. 1. According to the stipulated facts, Murie became the sole shareholder, officer, and director of the Debtor after her spouse passed away in 2013. Doc. No. 20 at ¶ 2. In September 2016, Murie and Albert "signed a Stock Purchase Agreement, transferring Murie's stock interests to

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532. Additionally, all citations to "Rule" are to the Federal Rules of Bankruptcy Procedure.

MEMORANDUM OF DECISION - 1

Albert, subject to certain payments and contingencies." *Id.* at ¶ 4. Albert also signed a "Stock Pledge Agreement, whereby he pledged his entire stock interest to secure the payment of the purchase price (and the loan that was included in the Stock Purchase Agreement)." *Id.* at ¶ 6. Thereafter, Murie discontinued day-to-day management of Debtor, did not attend or request to attend corporate meetings, and was not otherwise involved in Debtor's operations. *Id.* at ¶ 8. Albert executed a Consent of Director and Shareholder in Lieu of a Special Meeting, adopting resolutions naming him director, president, secretary, and treasurer of Debtor. *Id.* at ¶ 9; Doc. No. 16. As of the petition date, Albert still owed Murie a significant sum under the terms of the Promissory Note and Stock Purchase Agreement. *Id.* at ¶ 10. "When the Debtor began to have problems financially, Albert caused the Debtor's bankruptcy counsel to compose a letter which was sent to Murie." *Id.* at ¶ 8. Murie did not respond to the letter or contact Albert or Debtor's bankruptcy counsel. *Id.* at ¶ 9. A few months after the letter to Murie, Albert initiated this chapter 7 case on behalf of Debtor. As required by Local Bankruptcy Rule 1002-1(c), Albert submitted a Statement Regarding Authority to Sign and File Petition and provided the resolutions adopted by the board that authorized the filing. Doc. No. 6.

     Murie argues that cause exists to dismiss the case due to a lack of corporate authority to file. She asserts that the decision to file a bankruptcy petition requires shareholder approval under I.C. §§ 30-29-1202 and 30-29-1402, that she is the majority

MEMORANDUM OF DECISION - 2

shareholder pursuant to the Stock Pledge Agreement,[2] and, because she did not approve the filing, Albert lacked corporate authority to file the petition. The Debtor disagrees with Murie's contention that she is a majority shareholder and that I.C. §§ 30-29-1202 and 30-29-1402 apply. Alternatively, Debtor argues that, even assuming Murie has rights, she waived them.

**ANALYSIS**

Section 707(a) contains a non-exhaustive list of factors constituting cause to dismiss a chapter 7 case. "It is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed." *In re Real Homes, LLC*, 352 B.R. 221, 225 (Bankr. D. Idaho 2005). As stated by a leading treatise, "[i]t is well established that, for a corporation, 'the initiation of [bankruptcy] proceedings, like the run of the corporate activities, is left to the corporation itself, i.e., to those who have the power of management.' Such determination is governed by applicable state law." 2 *Collier on Bankruptcy* ¶ 301.04 (16th ed. 2024) (quoting *Price v. Gurney*, 324 U.S. 100, 104 (1945)) (second alteration in original). It is undisputed that Idaho law applies in this case. Thus, the Court turns to Idaho law to determine who has the corporate authority to file a bankruptcy petition.

In Idaho, corporations are subject to the Idaho Business Corporation Act, I.C. §§ 30-29-101 to 1704, which is modeled after the Model Business Corporation Act

---

[2] Murie relies on the following provision of the Stock Pledge Agreement: "while there is an outstanding amount due pursuant to the Stock Purchase Agreement, the Pledgee's security interest will not go below 51% of the Sale Shares. Pledgee will remain majority stockholder as long as there is an outstanding balance on the Stock Purchase Agreement." Doc. No. 20 at Ex. 6.

MEMORANDUM OF DECISION - 3

("MBCA"). Addressing corporate governance, I.C. § 30-29-801 provides that subject to valid shareholder agreements and any permissible limitation set forth in the articles of incorporation, "all corporate powers shall be exercised by or under the authority of the board of directors, and the business affairs of the corporation shall be managed by or under the direction and subject to the oversight of the board of directors."

Courts across the country have held that authority to file a bankruptcy petition lies with the board of directors unless provided otherwise by the corporation's organizational documents. *See Ullrich v. Welt (In re Nica Holdings, Inc.)*, 810 F.3d 781, 789-90 (11th Cir. 2015) (collecting cases). Here, Debtor's bylaws outline specific powers and duties of directors, and its articles of incorporation state that the "business of the Corporation shall be managed by its Board of Directors," but neither specifically address filing a petition for relief in bankruptcy. Doc. Nos. 14, 16.

Murie acknowledges the Debtor's organizational documents are silent regarding authority to file but argues other provisions of the Idaho Business Corporation Act apply to require shareholder approval, specifically I.C. §§ 30-29-1202 and 30-29-1402.

### A.   Idaho Code § 30-29-1202 does not apply

In pertinent part, I.C. § 30-29-1202 provides:

(a) A sale, lease, exchange or other disposition of assets, other than a disposition described in section 30-29-1201, Idaho Code, requires approval of the corporation's shareholders if the disposition would leave the corporation without a significant continuing business activity. A corporation will conclusively be deemed to have retained a significant continuing business activity if it retains a business activity that represented, for the corporation and its subsidiaries on a consolidated basis, at least twenty-five percent (25%) of total assets at the end of the most recently completed fiscal year, and either twenty-five percent (25%) of income from continuing

MEMORANDUM OF DECISION - 4

   operations before taxes or twenty-five percent (25%) of revenues from continuing operations for the most recently completed fiscal year.

   (b) To obtain the approval of the shareholders under subsection (a) of this section, the board of directors shall first adopt a resolution authorizing the disposition. The disposition shall then be approved by the shareholders.

Murie argues that a bankruptcy petition falls within the "disposition of assets" described in subsection (a). And, therefore, the filing lacked corporate authority because the board did not submit the resolution to shareholders for approval. This Court considered a similar issue in *In re Quarter Moon Livestock, Co.*, 116 B.R. 775 (Bankr. D. Idaho 1990).

  In *Quarter Moon*, the corporation's board adopted a resolution to file a chapter 7 petition for relief. The board acted without shareholder approval. Shareholders holding a 50% interest moved for dismissal arguing the filing was not authorized under state law. Like Murie, "they urge[d] that the decision to file the petition constitutes a sale or disposition of all or substantially all of the company's assets other than in the ordinary course of its business" under I.C. § 30-1-79, which required shareholder approval.[3] 116 B.R. at 779-80. The Court declined adopting the shareholders' interpretation of the statute to include a bankruptcy petition. In doing so, the Court considered the statutory scheme and its purpose.

  Under the state law, a disposition of such nature triggers "dissenters' rights," i.e., "a shareholder either agrees to the sale, or he is presented with an opportunity to demand

---

[3] As noted, the Idaho Business Corporation Act, §§ 30-29-101 et seq. applies in this case. While it is a different statute, Murie's counsel acknowledged at the December 9 hearing that I.C. § 30-29-1202 is fundamentally equivalent to the statute at issue in *Quarter Moon*.

MEMORANDUM OF DECISION - 5

the purchase of his stock." *Id.* at 780.[4]  The Court in *Quarter Moon* observed that the "protections afforded by the statutes are not necessary, however, with respect to a decision to file for bankruptcy." *Id.*  To note, dissenters' rights were not triggered if the disposition was "pursuant to an order of a court having jurisdiction in the premises or a sale for cash on terms requiring that all or substantially all of the net proceeds of sale be distributed to the shareholders in accordance with their respective interests." *Id.*  Put another way, it is unnecessary to "extend special protection to minority shareholders where the liquidation is either judicially supervised, or where there is to be a distribution of the sale proceeds in a manner which will fairly respect the stockholders' interest." *Id.*

As "[a]ll stockholders will receive distributions from the bankruptcy estate, after payment of creditor claims, according to their respective stock interest . . . .  Clearly, the bankruptcy process is designed to promote the same goals as intended by the legislature under the state laws." 116 B.R. at 780.  The Court considered that the decision to file bankruptcy "may be of such importance so as to arguably require shareholder approval." However, the corporation had not included such a requirement in its organizational documents and the Court felt it "strained the purpose of the statute to adopt such an interpretation." *Id.* at 780.  The Court did "not feel it should employ an expansive reading of the state law in the absence of some direction from the Idaho courts." *Id.* (stating in a footnote that if the Idaho legislature intended a bankruptcy petition to be of such consequence to the shareholders, "it is curious why it is not mentioned expressly in

---

[4] The Idaho Business Corporation Act creates similar rights but calls them "appraisal rights." *See* I.C. § 30-29-1302.

MEMORANDUM OF DECISION - 6

either the provision requiring shareholder approval . . . or the provision providing for 'dissenters' rights'").

Murie argues that unlike *Quarter Moon*, her interests as the majority shareholder "are not adequately protected by statute or through a bankruptcy proceeding." However, the Court's decision in *Quarter Moon* did not rest on the shareholders' minority status.[5] Rather, the Court declined to interpret the statute to include a petition for relief given the statutes design and purpose. *See* 116 B.R. at 780. The Court considered the Supreme Court's decision in *Royal Indem. Co. v. American Bond & Mortg. Co.*, 289 U.S. 165, 170-71 (1933).

> We are told that this statute prohibits the filing of a voluntary petition in bankruptcy by authority of a resolution of the board of directors, and that a shareholders' vote is required to authorize such action. No case decided by the [state] courts is cited in support of this assertion. But it is said that the filing of such a petition is a conveyance of all of the corporate property, and so plainly within the statutory prohibition. We cannot agree . . . . [I]t seems too plain to need elaboration that the statute does not in terms affect the initiation of a bankruptcy proceeding, and was passed for a wholly different purpose.

Here, the Court similarly does not find Murie's argument persuasive, nor has it found any binding authority that comes to the result sought by Murie. One unpublished decision exists, in which a bankruptcy court determined that a petition for relief was an "action consistent" with the disposition described in a MBCA-modeled statute. *In re Zebranek & Doughten, P.A.,* 2001 WL 1825793, at *1-2 (Bankr. M.D. Fla. July 31, 2001). However, that court's decision was in the context of whether the filing required approval by the

---

[5] The opposing shareholders in *Quarter Moon* held a 50% interest.

MEMORANDUM OF DECISION - 7

board of directors. As stated above, courts have consistently held this authority lies with the board. *See In re Kit Carson Home & Museum, Inc.*, 2021 WL 955416, at *4 (Bankr. D.N.M. Mar. 12, 2021) (authority granted to board to manage affairs vested board with "sole authority" to determine whether to file bankruptcy) and *In re ComScape Telecomms., Inc.*, 423 B.R. 816, 831 (Bankr. S.D. Ohio 2010) (stating it is "beyond cavil that modern American corporations invoke the protection of the bankruptcy laws without obtaining shareholder votes" and collecting cases that authority to file a petition lies with the board). As such, the Court does not find the *Zebranek & Doughten* decision compelling.

Moreover, while the applicable statutes have been superseded and the Idaho Business Corporation Act has undergone several revisions in the time since *Quarter Moon* was decided, the legislature has not amended the statutes to specifically include a bankruptcy filing in I.C. § 30-29-1202.[6]

In short, Murie did not cite, nor could the Court find, any authority that would compel the Court's departure from *Quarter Moon*. The Court declines to adopt an expansive reading of the state statute to include a petition for relief.

B.     **Idaho Code § 30-29-1402 does not apply**

Murie also relies on I.C. § 30-29-1402, which requires shareholder approval to dissolve a corporation. Murie argues the filing was subject to this provision given that dissolution "is the undoubted effect of a Chapter 7 bankruptcy filing." However, the

---

[6] These revisions largely tracked the most recent version of the MBCA. Although there have been instances in which the Idaho legislature has altered provisions of the MBCA.

MEMORANDUM OF DECISION - 8

Code does not provide for dissolution of corporations. *See* 6 *Collier on Bankruptcy* ¶ 727.01 (16th ed. 2024). "After liquidation, any dissolution of the corporation or partnership that the parties desire must be effectuated under state law." *Id.* *See also* *NLRB v. Better Bldg. Supply Corp.*, 837 F.2d 377, 379 (9th Cir. 1988) (citing *Collier* with approval stating "Chapter 7 proceedings cannot dissolve a corporation. If the Mylans sought to dissolve their corporations, they should have used state procedures."). Thus, the Court concludes that a bankruptcy filing does not require shareholder approval under I.C. § 30-29-1402.[7]

**CONCLUSION**

As the Debtor obtained authorization from its board of directors to file the bankruptcy petition, and additional shareholder approval under I.C. §§ 30-29-1202 and 30-29-1402 was not required, the Court concludes the filing was made with corporate authority and no cause exists to dismiss the case. Accordingly, the Court will deny the motion to dismiss and enter an order consistent with this decision.

DATED: January 23, 2025



_____
NOAH G. HILLEN
Chief U.S. Bankruptcy Judge

---

[7] Because the Court finds that shareholder approval was not required, the Court will not address the arguments raised by the parties concerning the nature and extent of Murie's interest under the Stock Pledge Agreement and whether Murie waived any rights she may have had.

MEMORANDUM OF DECISION - 9